<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID SOLIMINE,<br><br>　*Plaintiff*,<br><br>　v.<br><br>CHUBB CUSTOM INSURANCE COMPANY,<br><br>　*Defendant*. | Civil Action No. 25-01250<br><br>**OPINION**<br><br>December 23, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant Chubb Custom Insurance Company's ("Defendant" or "Chubb") motion to dismiss Count 2 or, in the alternative, to sever and stay discovery of Count 2 of David Solimine's ("Plaintiff") Complaint (ECF 1, "Compl."). (ECF 7, "Def. Mot.") Plaintiff opposed the motion. (ECF 16, "Opp.") Defendant filed a reply. (ECF 19, "Reply.") The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' motion to dismiss is **DENIED** and Defendant's alternative request to sever and stay discovery on Count 2 is **GRANTED**.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This suit arises from Defendant's alleged refusal to cover the costs of repairing damage to Plaintiff's smart home system and its component parts pursuant to a "Blanket Home" insurance policy issued to Plaintiff by Defendant and in effect from January 13, 2020 to January 13, 2021 (the "Policy"). (Compl. ¶¶ 1, 6-7.) Plaintiff specifically alleges that Defendant breached (1) the parties' insurance contract because Defendant did not provide coverage under the Policy for functionally impaired component parts of Plaintiff's Smart Home System ("Smart Home System" or "SHS") following its damage (*id.* ¶¶ 1, 16-17, 47-50); and (2) Defendant breached the covenant of good faith and fair dealing by relying on an unreliable and flawed expert opinion in denying that coverage. (*Id.* ¶¶ 51-54.)

In November of 2020, a leak from the HVAC system in Plaintiff's home[2] caused a substantial amount of damage (the "Loss Event"), which led Plaintiff to file a claim with Defendant. (*Id.* ¶¶ 9-10.) Plaintiff relocated from the home for three years to allow for the completion of restoration work on his home. (*Id.* ¶ 14) Plaintiff alleges that the component parts of the SHS, which were installed at the home in 2014 and were in proper working order before the Loss Event, were damaged by construction debris and moisture from the restoration. (*Id.* ¶¶ 12-13, 15-16.) As a result, Plaintiff decided to expand his claim under the Policy to include the costs of replacing the component parts of the SHS, which Plaintiff alleges cost "several hundred thousand dollars." (*Id.* ¶¶ 1, 11, 16-17.)

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).
[2] The Policy lists Plaintiff's home at 2 Stevens Road, Mendham, New Jersey 07945 as an "Insured Location" in the Policy's declarations pages. (*Id.* ¶ 7.)

Defendant responded by retaining Exponent Inc. ("Exponent"), an electrical engineering and computer science firm, to generate a report on the damage to the SHS. (*Id.* ¶ 18.) Between November of 2023 and August of 2024, Exponent prepared an initial report (the "Report") and five separate addenda on their findings. (*Id.* ¶ 19.) Exponent's ultimate conclusion was that the restoration project on Plaintiff's home following the Loss Event did not cause damage to the SHS. (*Id.* ¶ 24-35)

The Report focused on whether the component parts of the SHS exhibited damage related to (1) construction dust/debris and/or (2) water ingress/moisture. (*Id.* ¶ 21.) The Report identified dust accumulation on the interiors and exteriors of the component parts of the SHS and employed scientific (SED/EDS) analysis to determine that some of the accumulation was sheetrock dust. (*Id.* ¶¶ 22-23, 25.) But the Report concluded that much of the accumulation of sheetrock dust was "consistent with household dust of equipment of this age." (*Id.* ¶ 24.) In regard to one component part, the Cisco Switch, Exponent determined that there were large dust particles on the exterior and interior, and that "[p]articles of this size would not be pulled into the unit via cooling fans, therefore it is unclear how these particles entered the Cisco switch if it was installed and operated in a typical manner." (*Id.* ¶¶ 25-26) The Report also concluded that the dust accumulation around the cooling fans could not have been caused by the construction in the home because the "sheetrock work [ ] occurred nowhere near the AV room." (*Id.* ¶ 28.) Finally, on the issue of water ingress/moisture, the Report concluded that there was "[n]o evidence of physical damage related to moisture or water was present on any of the equipment in the AV closet." (*Id.* ¶ 31.)

Plaintiff alleges that Defendant's decision not to cover Plaintiff's costs for the SHS damage was based exclusively on the Report. (*Id.* ¶¶ 1, 18.) Plaintiff alleges that Defendant's reliance on the Report was improper because the Report was flawed and unreliable. (*Id.* ¶¶ 35-38, 53.)

3

Specifically, Plaintiff alleges that the Report's conclusion that dust particles could not have been pulled into the cooling fans of the component parts of the SHS is "directly contradicted" by images which "show a substantial number of large particles built up and caked around the exact area where cooling fans are located." (*Id.* ¶ 27; *see also id.* ¶ 33.) Plaintiff also alleges that images included in the Report contradict Exponent's determination that there was no water moisture damage to the equipment. (*Id.* ¶¶ 31-32, 34-35.) Plaintiff further alleges that images of the "crown CTs Amplifier" show a dust pattern that "could only have been formed" by water or moisture. (*Id.* ¶ 32; *see also id.* ¶ 34.) Plaintiff also takes issue with the Report's conclusion that the dust in the SHS could not have been caused by the construction because of the construction's distance from the AV room. (*Id.* ¶¶ 28-29.) Plaintiff maintains that this assessment is unreliable because an electrical engineering and computer science firm such as Exponent is "not competent to opine on the flow and migration of construction dust/debris within a construction site." (*Id.* ¶ 29.) Finally, Plaintiff maintains that Exponent did not do enough "functional testing" on the component parts of the SHS. (*Id.* ¶¶ 40-43.) The only functional testing Exponent undertook, in connection with preparing Addendum 2, was insufficient, according to Plaintiff. (*Id.* ¶ 43.) Plaintiff alleges that Defendant otherwise failed to "conduct any performance or load bearing capability testing…despite repeatedly being informed by Plaintiff and his representatives that the component parts were not functioning properly." (*Id.* ¶ 44.)

Plaintiff filed the Complaint on February 13, 2025, alleging that the above conduct constituted breach of contract (Count 1) and breach of the covenant of good faith and fair dealing (Count 2). (*Id.* ¶¶ 46-54.) Defendant filed its partial motion to dismiss pursuant to Rule 12(b)(6) on April 14, 2025, arguing that Plaintiff failed to plead sufficient facts to demonstrate a breach of good faith claim or, in the alternative, requesting that the Court sever and stay discovery on Count

2. (ECF 7-1, "Def. Br.") Plaintiff filed an opposition motion on May 19, 2025 (ECF 16) and Defendant filed a reply on May 27, 2025. (ECF 19.)

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." Id. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure

to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.   ANALYSIS

Chubb argues in its Partial Motion to Dismiss that Plaintiff has failed to state a claim for breach of the implied covenant of fair dealing ("bad faith") because the Complaint is devoid of facts as to how Chubb allegedly acted in reckless disregard of its obligations under the Policy. (Chubb Br. at 4-7.) Chubb alternatively argues that the Court should sever the bad faith claim and stay discovery pending the resolution of Count 1. (*Id.* at 7-9.) The Court addresses each argument in turn.

#### A.   Failure to State a Claim

In New Jersey, "'an insurance company owes a duty of good faith to its insured in processing a first-party claim.'" *Onex Credit Partners, LLC v. Atrium 5 Ltd.*, 2014 WL 4798758, at *6 (D.N.J. Sept. 26, 2014) (quoting *Pickett v. Lloyd's*, 621 A.2d 445, 450 (N.J. 1993)). To establish a bad faith claim, a plaintiff must show "(1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004) (citing *Pickett*, 621 A.2d at 454). A claim for bad faith claim, "focuses on the conduct of the insurer in its review and processing of a claim under an existing policy." *J. Fletcher Creamer & Son, Inc. v. Hiscox Ins. Co. Inc.*, No. 19-21638, 2020 WL 2899499, at *3 (D.N.J. June 2, 2020) (citing *Laing v. Am. Strategic Ins. Corp.*, No. 14-01103, 2014 WL 4953250, at *2 (D.N.J. Oct. 1, 2014)). "Neither negligence nor mistake is sufficient to show bad faith." *Onex Credit Partners*, 2014 WL 4798758, at *9.

The Court finds that Plaintiff has adequately alleged a bad faith claim. Plaintiff alleges that Defendant "relied exclusively and entirely on the opinions of Exponent in continuously denying Plaintiff's requests for coverage of the Smart Home System component parts" (Compl. ¶ 52), although Exponent's opinions were "unreliable and fundamentally flawed." (*Id.* ¶ 53.) Plaintiff sets forth specific allegations as to why Exponent's opinions were unreliable and flawed, including that Exponent (a) improperly dismissed the confirmed presence of sheetrock dust inside the component parts; (b) ignored photographic evidence of water/moisture damage on several component parts; and (c) failed to conduct proper functionality testing of the performance and load-bearing capabilities of the Smart Home System component parts. (*Id.* ¶¶ 23-28, 30-36, 40-44.) The Complaint further alleges that Exponent's Report cannot be reasonably relied upon because Exponent is "an electrical engineering and computer science firm…not competent to opine on the flow and migration of construction dust/debris within a construction site." (*Id.* ¶ 29.) Finally, Plaintiff alleges that Defendant relied exclusively on Exponent's flawed opinions, which was unreasonable. (*Id.* ¶¶ 52, 54.)

Accepting these factual allegations as true, Plaintiff has pleaded a plausible claim that Chubb's "actions demonstrated at least reckless indifference to the lack of a reasonable basis for denying Plaintiff's [ ] claim." *801 Asbury Ave., LLC v. Great Am. Ins. Co.*, No. 20-16522, 2021 WL 3910147, at *5 (D.N.J. Sept. 1, 2021); *see also Abiona v. GEICO Indem. Co.*, No. 15-6013, 2016 WL 1046791, at *3 (D.N.J. Mar. 16, 2016) (declining to dismiss bad faith claim where Plaintiff's allegations could plausibly support a conclusion that Defendant insurer "recklessly disregarded the lack of a reasonable basis for denying [Plaintiff]'s claim"); *Estevez v. Kingstone Ins. Co.*, No. 22-05391, 2022 WL 17991145, at *2 (D.N.J. Dec. 29, 2022) (finding that Plaintiff plausibly pleaded that Defendant denied the claim "without a debatable reason for doing so").

7

The Court briefly addresses the New Jersey Supreme Court's directive that under the "fairly debatable" standard, a plaintiff must establish "as a matter of law a right to summary judgment on the substantive claim," even at the motion to dismiss stage. *Pickett*, 621 A.2d at 453-54 (internal citations omitted). Courts in this District have found that, despite this rule, where "the Court simply cannot determine whether Plaintiff[] [ ] can establish a right to summary judgment on their breach of contract claim at the pleadings stage with no developed factual record before it[,]" then a bad faith claim can proceed past the motion to dismiss stage. *Spina v. Metropolital Life Ins. Co.*, No. 12-14129, 2021 WL 2525713, at *10 (D.N.J. June 21, 2021) (citing *Gallerstein v. Berkshire Life Ins. Co. of America*, No. 05–05661, 2006 WL 2594862, at *4 (D.N.J. Sept. 11, 2006)). Such is the case here. Therefore, the Court follows "the lead of other courts in this district which have analyzed whether a plaintiff's claims, if true, would be sufficient to demonstrate the lack of a fairly debatable reason to deny coverage." *Id.* (citing *American Southern Home Insurance Company v. Unity Bank*, No. 16-3046, 2017 WL 1488128, at *3-4 (D.N.J. Apr. 25, 2017)); *see also, e.g.*, *Michelle Roche et al. v. Aetna Inc., et al.*, No. 22-00607, 2025 WL 3275076, at *9 (D.N.J. Nov. 24, 2025); *Laing v. Am. Strategic Ins. Corp.*, No. 14-1103, 2014 WL 4953250, at *3 (D.N.J. Oct. 1, 2014). As discussed, Plaintiff's claims as alleged are sufficient to demonstrate the lack of a fairly debatable reason to deny coverage.

### B. Severance and Stay of the Bad Faith Claim

The Court next turns to Defendant's alternative request to sever the bad faith claim and stay discovery of Count 2 pending the resolution of Count 1.

Under Federal Rule of Civil Procedure ("Rule") 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party . . . [and] may also sever any claim against a party." Fed. R. Civ. P. 21. "Severing claims under Rule 21 is appropriate where the claims to be

severed are discrete and separate in that one claim is capable of resolution despite the outcome of the other claim." *AIG Specialty Ins. Co. v. Thermo Fisher Sci., Inc.*, No. 20-13046, 2021 WL 2680013, at *4 (D.N.J. June 29, 2021) (quoting *Ames v. USAA Life Ins. Co.*, No. 18-09865, 2018 WL 5634684, at *1 (D.N.J. Oct. 31, 2018)).

"Given that the 'fairly debatable' standard necessitates a ruling on coverage prior to the adjudication of a bad faith claim, . . . it is '[n]o surprise, then, that severance and stay of bad faith claims has been called the 'prevailing practice' in both the state and federal courts of New Jersey.'" *Id.* at *5 (quoting *J. Fletcher Creamer*, 2020 WL 2899499, at *4 (collecting cases)). Whereas "'breach of insurance contract claims concern policy coverage[,]'" claims for bad faith "'concern the insurer's general claims handling procedures, its claims conduct in the case at issue, and its knowledge and state of mind about the grounds for denial of coverage.'" *Id.* (quoting *Bayshore Recycling Corp. v. ACE Am. Ins. Co.*, No. 19-21618, 2020 WL 1986484, at *2 (D.N.J. Apr. 27, 2020)).

The factors courts consider in determining whether severance is warranted include: "(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted." *Riverview Towers Apartment Corp. v. QBE Ins. Corp.*, No. 14-6744, 2015 WL 1886007, at *1 (D.N.J. Apr. 17, 2015) (quoting *Picozzi v. Connor,* No. 12-4102, 2012 WL 2839820, at *6 (D.N.J. July 9, 2012)).

The Court will sever and stay discover on Count 2. "[T]his Court has refused to adopt a blanket rule that a plaintiff's bad faith claim should be severed in every coverage case." *Ames*,

9

2018 WL 5634684, at *2. Rather, "[e]very case is different and must be decided on its own facts." *Id.* In assessing the specific facts of this case, the Court determines that although Count 1 and Count 2 involve some factual overlap, *i.e.*, the cause of damage to the Smart Home System, the key issue for Count 2 is Defendant's investigation of the damage to Plaintiff's Smart Home System. (*See* Compl. ¶¶ 52-53.) The Court does not agree with Plaintiff that "Plaintiff's bad faith and breach of contract claims are both premised on the exact same conduct." (Opp. at 7.) Defendant's investigation of the damage, along with its reliance on Exponent's Report, will involve "the insurer's general claims handling procedures, its claims conduct in the case at issue, and its knowledge and state of mind about the grounds for denial of coverage." *Bayshore Recycling*, 2020 WL 1986484, at *2. Accordingly, the claims are different for purposes of a severance analysis.

As to the second factor, neither party has offered detail regarding the testimony and documentary proof each claim will require. However, the Court "agrees with the overwhelming majority of courts that bad faith claims regularly demand different witnesses and documentary proof from breach of contract claims." *J. Fletcher Creamer*, 2020 WL 2899499, at *5 (citations omitted); *see also AIG Specialty Ins. Co. v. Thermo Fisher Sci., Inc.*, No. 20-13046, 2021 WL 2680013, at *6 (D.N.J. June 29, 2021) (same).

Finally, it does not appear from the briefing that either party will suffer significant prejudice if the Court denies Defendant's motion to sever, although if Chubb's motion is denied it would have to engage in additional discovery to litigate the bad faith claim while the contract clam is still in dispute. In any case, "the expedient resolution of the breach of contract claim best serves the interests of both parties," as the discovery necessitated by the bad faith claim may distract from the coverage questions. *J. Fletcher Creamer*, 2020 WL 2899499, at *5; *see also Port Liberte*

*Homeowners Associationk, Inc. v. Lexington Ins. Co.*, No. 16-7934, 2017 WL 1528697, at *2 (D.N.J. Apr. 25, 2017) ("Nothing about the claims here suggests that a finding of bad faith or a fiduciary breach is so likely that the Court should collapse the sequence of issues and depart from the usual, sensible practice of severance."). Balancing these factors, the Court concludes that severance and a stay of discovery is warranted for Count 2.

### IV.     CONCLUSION

For the reasons stated above, Defendant's partial motion to dismiss Count 2 of the Complaint (ECF 7) is **DENIED**, and Defendant's alternative request to sever and stay discovery on Count 2 is **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:       Clerk
cc:         Cari Fais, U.S.M.J.
            Parties